## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | Civil Action No. 26-662 |
| WHITEHALL TRUST, | : | |
|     Debtor. | : | |
| | : | |
| | : | |
| LEHIGH VALLEY 1, LLC, Appellant. | : | |

### MEMORANDUM

**Henry, J.**                                                                                                      **May 18, 2026**

This is an appeal from an order of the United States Bankruptcy Court for the Eastern District of Pennsylvania approving Debtors' application to employ joint bankruptcy counsel. For the reasons that follow, the order of the Bankruptcy Court is vacated.

### I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

I write mainly for the parties in this matter, who are quite familiar with the history of this case, so I will not belabor the majority of the facts. The shortened version is as follows: Whitehall Trust and Saucon Trust (the "Trust Debtors") own real estate that they lease to Whitehall Manor, Inc. and Saucon Valley Manor, Inc. (the "Manor Debtors") for operation as personal care homes. In 2024, Lehigh Valley 1 ("Lehigh"), holder of mortgages on the Trust properties, commenced mortgage foreclosure proceedings in this Court, and on December 26, 2025, the Trust Debtors filed petitions for bankruptcy, along with the Manor Debtors, staying the mortgage foreclosure actions.

In the bankruptcy matters, the Debtors filed an application seeking to employ the law firm of Dilworth Paxson LLP as bankruptcy counsel for all four debtors, the Trust Debtors and the Manor Debtors. Lehigh objected to the Application due to alleged conflicts of interest between the Trust Debtors and the Manor Debtors, and after a hearing held on January 27, 2026,

1

the Bankruptcy Court approved Dilworth Paxson as bankruptcy counsel for all debtors. Lehigh then appealed that Order to this Court, arguing that there are actual conflicts of interest between the Debtors that bar Dilworth from representing all of them as bankruptcy counsel.

Before moving on to the analysis of the conflicts issue, there is one factual development that deserves a bit more attention. In the mortgage foreclosure actions involving the Trust entities, the Trusts and their counsel repeatedly represented that they were completely separate and distinct from the Manor entities, with completely differing interests and ownership. The Trust entities had different attorneys in the foreclosure action than the Manor entities, who were involved only in the context of a motion to quash a subpoena. The Trust entities represented that they had absolutely no access to documents that were in the possession of the Manor entities. The Trust entities went so far as to assert that the Trust entities and the Manor entities "not only do not share a parent-subsidiary relationship but are not even in a corporate relationship at all. The only connection between the entities is wholly personal." Record on Appeal ("App."), p. 413. They further stated that "[t]here is simply no indication that the entities here (the Trust entities and the Manor entities) operated as a single functional unit." App. 417. This representation as to the alleged separateness of the Trust entities and the Manor entities was made during the entire course of the mortgage foreclosure matter.

When the Debtors filed for bankruptcy and requested to be permitted to employ the same bankruptcy counsel for the Trust entities and the Manor entities, the Debtors now claimed that the four entities were a single business enterprise. Lehigh objected to joint counsel, in part because the Debtors had taken contradictory positions in the foreclosure matter and the bankruptcy as to the relationship between the Trust Debtors and the Manor Debtors. In the foreclosure action, the Debtors represented that the Trust Debtors and the Manor Debtors were

separate entities, but then in the bankruptcy, the Debtors contended that the four entities were "co-dependent entities," "under Mr. Atiyeh's ultimate control," and that "[t]heir interests are fully aligned." App. 362. A review of the record shows that Mr. Atiyeh testified at a January 27, 2026, hearing before the Bankruptcy Court regarding the representations that were made to this Court during the foreclosure actions about the relationship of the entities to each other. In that testimony, he claimed that the written representations made in the foreclosure regarding the status of the Trust entities and the Manor entities as totally separate and unrelated entities were "a mistake," were "improper," and were "incorrect." App. 501. He further testified that "when [his lawyer] wrote this, I don't know that he understood what he was saying, but the truth is…that it was built as a personal care home and just separated out…that's how it was designed." App. 499.

At this point, I cannot be certain what the relationship actually is between the Trust entities and the Manor entities. I am certain, however, that there is a significant dispute as to the Debtors' claim that they are all "co-dependent entities." If the Trust entities and the Manor entities were in fact "co-dependent," why did the Manor entities need separate counsel in the foreclosure matters to file a motion to quash? And if separate counsel was necessary for something as routine as a discovery motion, how could the entities all possibly engage the same bankruptcy counsel for something as complex as their bankruptcy matters? I have many questions and concerns regarding the relationship of the Trust entities and the Manor entities to each other, as well as the candor of the Trust entities and their counsel to this Court in the foreclosure action, but those concerns are for another day. The instant opinion will only address the alleged conflict of interest that may exist if the entities are permitted to engage the same bankruptcy counsel.

## II.    LEGAL STANDARD

District courts have jurisdiction to hear appeals from final judgments and orders of the bankruptcy courts pursuant to 28 U.S.C. § 158. Under the Federal Rules of Bankruptcy Procedure, a district court, sitting as an appellate tribunal, "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. I review a decision of the bankruptcy court approving an application for appointment of counsel under an abuse of discretion standard. *In re Pillowtex*, 304 F.3d 246, 250(3d Cir. 2002). An abuse of discretion exists if the bankruptcy court's decision rests upon a "clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 470 (3d Cir. 1998). A bankruptcy court possesses "considerable discretion in approving [counsel]'s retention under the standards of [the bankruptcy code] in light of the specific facts and circumstances of the case." *In re Boy Scouts of Am.*, 630 B.R. 122, 130 (D.Del. 2021), aff'd 35 F.4th 149 (3d Cir. 2022).

## III.   ANALYSIS

Section 327(a) of the Bankruptcy Code permits a debtor, "with the court's approval, [to] employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons..." 11 U.S.C. §327(a). Employment under this section though, is only for professionals that do not "hold or represent an interest adverse to the estate and are disinterested." *In re Congoleum Corp.*, 426 F.3d 675, 688 (3d Cir. 2005). Disinterested is defined as people who do "not have an interest materially adverse to the interest of the estate or of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." *Boy Scouts*, 35 F.4th at 157 (*quoting* 11 U.S.C. §101(14)(C)). The Debtors and Dilworth bear the burden to establish that Dilworth is "both disinterested and [does] not represent an interest adverse to the estate." *In re Big Mac Marine, Inc.*, 326 B.R. 150, 154 (8th BAP Cir. 2005).

4

There are 3 categories of §327 conflicts: 1) actual conflicts of interest; 2) potential conflicts of interest; and 3) appearances of conflict. *Boy Scouts*, 35 F.4th at 157. "[A] conflict is actual when the specific facts before the bankruptcy court suggest that 'it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." *Id*. at 158. The existence of an actual conflict of interest results in a *per se* disqualification of an attorney. *Marvel Ent. Grp*., 140 F.3d at 476. Potential conflicts of interest can result in disqualification of counsel unless "the possibility that the potential conflict will become actual is remote," and then court uses its discretion in assessing this type of potential conflict. *In re Vascular Access Centers, L.P*., 613 B.R. 613, 624 (Bankr. E.D. Pa. 2020). Counsel may not be disqualified based upon the appearance of a conflict alone. *Marvel Ent. Grp*., 140 F.3d at 476.

Lehigh argues that Dilworth has an actual conflict of interest in this matter between representing both the Trust Debtors and the Manor Debtors and therefore should be barred from representing all four entities. The Debtors claim that there is no actual conflict here because the Debtors operate as a single business enterprise, have a group obligation to their creditors and are ultimately controlled by one person, Mr. Atiyeh.

After a review of the record in this matter and the parties' briefing, I find that an actual conflict of interest exists that bars Dilworth from representing both groups of Debtors. It is undisputed that the Trust Debtors own the relevant real property, are landlords for the Manor Debtors and that leases exist between the Trust Debtors and the Manor Debtors.[1] It is also

---

[1] On December 19, 2025, in the foreclosure matter, I invalidated the 2023 Lease Amendments entered into between the Trust Debtors and the Manor Debtors that allegedly waived all past due rental amounts owed by the Manor Debtors and capped maximum rent for 2025 at a greatly reduced amount. In their opposition to Lehigh's instant bankruptcy appeal, the Debtors stated that they "do not dispute that the Amended Leases were voided by this Court's order … [and] that they are proceeding in their Chapter 11 cases with the understanding that those amendments are not effective." ECF No. 17, p. 20. Accordingly,

5

undisputed that the only source of income for the Trust Debtors is rent from the Manor Debtors, and that the Manor Debtors lease the properties from the Trust Debtors to operate their personal care homes and pay rent to the Trust Debtors.

To operate successfully and pay their mortgages, taxes, insurance, etc, the Trust Debtors need to receive the maximum possible amount of rent from the Manor Debtors. Conversely, to be as profitable as possible, the Manor Debtors need their monthly rent payments to the Trust Debtors to be as low as possible. The two different groups of Debtors have very different interests as to the terms of the leases and the rent payment obligations. These divergent interests create a clear, actual conflict of interest that will not permit Dilworth to represent both groups of Debtors in bankruptcy.

A specific example of this conflict is illustrated by the parties' positions as to whether Section 365(d)(3) of the Bankruptcy Code applies in this matter. This section states that "[t]he trustee shall timely perform all the obligations of the debtor … arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected…" 11 U.S.C. § 365(d)(3). Basically, this section requires a tenant debtor to make post-petition rent payments pursuant to a lease of non-residential real property up until the time that a bankruptcy plan is confirmed. Lehigh argues that the leases between the Trust Debtors and the Manor Debtors are non-residential leases and therefore, section 365(d)(3) applies to the leases in question and the Manor Debtors have an "immediate obligation to pay rent to the Trust Debtors…" under section 365(d)(3). ECF No. 11, p. 32. In response to this, the Manor Debtors argue that the leases between the Trust Debtors and the Manor Debtors are residential real property leases and therefore, section 365(d)(3) does not apply. ECF No. 17, p. 25. Both Lehigh

---

when I reference leases between the Trust Debtors and Manor Debtors, I am referring to the leases that were in existence prior to the invalid 2023 amendments.

and the Debtors cite to case law that they each claim supports their respective positions. [2] However, the fact that Dilworth argued on behalf of **all** Debtors that the leases in question were residential leases goes to the very conflict of interest that I find so concerning. The Trust Debtors would benefit from application of section 365(d)(3) so that they could receive rental payments from the Manor Debtors to allow the Trust Debtors to meet some of their financial obligations to Lehigh. In contrast, the Manor Debtors would benefit from the non-application of section 365(d)(3), as they could keep the rental payments owed to the Trust Debtors and use them for operations. How could the same law firm properly advise both the Trust Debtors and the Manor Debtors and manage their competing interests regarding the applicability of section 365(d)(3) and all the questions that may accompany it?

It is apparent that the treatment of rent owed by the Manor Debtors to the Trust Debtors creates an actual conflict of interest between the Debtors. To try to avoid this conflict, the Debtors assert that because they purportedly "operate as a single business enterprise," their "obligation to creditors is not impacted by shifting money around among debtors." ECF No. 17, p. 15. First, based upon inconsistent representations repeatedly made to this Court and the bankruptcy court regarding the relationship of the Debtors to each other, there is a dispute as to whether it is true that these Debtors all operate as a single enterprise. Also, the conflict of interest regarding how the rents are treated exists regardless of whether the Debtors are related. Lastly, the Trust Debtors have no source of income other than the rent payments from the Manor Debtors and because of the lack of rent, the Trust Debtors have failed to pay their mortgage for almost five years. Therefore, the Debtors claim that they are all one enterprise and money is shifted around between them with no harm to creditors is obviously incorrect, as Lehigh has yet

---

[2] The Bankruptcy Court addressed this issue and determined that the leases in question were residential leases and section 365(d)(3) did not apply to this situation.

to receive a mortgage payment from the Trust Debtors, so it is clear that creditors are in fact being harmed.

It cannot be denied that there is an actual conflict of interest with respect to the Manor Debtors' obligation to pay rent to the Trust Debtors and in what amount. Accordingly, the same law firm cannot properly advise both the Trust Debtors and the Manor Debtors as to how the leases between the Debtors should be treated in the bankruptcies. Dilworth Paxson cannot represent both the Trust Debtors and the Manor Debtors in the bankruptcy proceeding, and therefore, I must vacate the Bankruptcy Court's order authorizing Debtors to employ Dilworth as bankruptcy counsel for all the Debtors. The Trust Debtors and the Manor Debtors must obtain separate counsel in the bankruptcy proceedings.

III.    **CONCLUSION**

Therefore, upon review of the record in this matter, as well as the parties' briefs, I find the Bankruptcy Court erred in permitting Dilworth Paxson to represent all Debtors in the bankruptcy proceedings. Accordingly, the order of the Bankruptcy Court authorizing such representation will be vacated and separate counsel must be obtained by the Trust Debtors and the Manor Debtors.